# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION

| | | |
|---|---|---|
| KAY DIANE ANSLEY, ET AL., | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | 1:15-CV-00274-MOC |
| | : | |
| STATE OF NORTH CAROLINA, | : | DISTRICT JUDGE |
| | : | MAX O. COGBURN, JR. |
| Defendant. | : | |
| | : | MAGISTRATE JUDGE |
| and | : | DENNIS L. HOWELL |
| | : | |
| BRENDA BUMGARNER, individually | : | |
| and on behalf of other similarly situated | : | |
| Jane and John Doe Magistrate Judges, | : | |
| | : | |
| Proposed Intervenor- | : | |
| Defendant. | : | |

---

## MEMORANDUM OF LAW IN SUPPORT OF PROPOSED INTERVENOR BRENDA BUMGARNER'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

---

Horatio G. Mihet*
Jonathan D. Christman*
LIBERTY COUNSEL
P.O. Box 540774
Orlando, Florida 32854
Tel: (407) 875-1776
Fax: (407) 875-0770
hmihet@lc.org
jchristman@lc.org
*Motion for pro hac vice admission pending

Stuart D. Sloan
KENNEY SLOAN & VANHOOK, PLLC
111 Heritage Hollow Drive
Franklin, North Carolina 28734
Tel: (828) 276-1177
Fax: (828) 276-1178
stu@ksvlaw.com

*Attorneys for Brenda Bumgarner*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION .................................................................................................................... 1

PLAINTIFFS' ALLEGATIONS ............................................................................................. 2

STANDARD OF REVIEW ...................................................................................................... 3

ARGUMENT ............................................................................................................................ 5

    A. Plaintiffs' Complaint Is Barred By The Eleventh Amendment ............................................5

    B. Plaintiffs' Complaint Should Be Dismissed Because Plaintiffs Lack Standing ................ 6

        1. Plaintiffs Lack Taxpayer Standing For Their Establishment Clause Claims .............. 8

        2. Plaintiffs Lack Standing For Their Equal Protection And Due Process Claims........ 11

    C. Plaintiffs' Complaint Fails To State An Establishment Clause Claim ............................ 13

    D. Plaintiffs' Complaint Fails To State An Equal Protection Claim .................................... 18

    E. Plaintiffs' Complaint Fails To State A Due Process Claim .............................................. 22

CONCLUSION ....................................................................................................................... 25

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Abbott Labs. v. Gardner*,
    387 U.S. 136 (1967)..................................................................................................11

*Abdus-Salaam v. Bill Maddalon Unique Southern Estates*,
    No. 11-410, 2012 WL 1569584 (W.D.N.C. May 3, 2012)....................................3, 4

*Allen v. Wright*,
    468 U.S. 737 (1984)....................................................................................................7

*Ariz. Christian Sch. Tuition Org. v. Winn*,
    131 S.Ct. 1436 (2011)........................................................................................8, 9, 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................................4, 5

*Ashwander v. Tenn. Valley Auth.*,
    297 U.S. 288 (1936)..................................................................................................11

*Bd. of Educ. of Kiryas Joel Village Sch. Dist. v. Grumet*,
    512 U.S. 687 (1994)..................................................................................................14

*Bd. of Trustees of Univ. of Alabama v. Garrett*,
    531 U.S. 356 (2001)....................................................................................................6

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................4, 5

*Boston v. Davis*,
    No. 11-450, 2011 WL 6935710 (W.D.N.C. Dec. 29, 2011)..................................4, 7

*Bowen v. Roy*,
    476 U.S. 693 (1986)..................................................................................................14

*Brody v. North Carolina State Bd. of Elections*,
    No. 10-383, 2011 WL 1843199 (W.D.N.C. May 16, 2011)..................................4, 5

*Brown v. Gilmore*,
    258 F.3d 265 (4th Cir. 2001) ...........................................................................13, 14, 15

*Burwell v. Hobby Lobby Stores, Inc.*,
    134 S.Ct. 2751 (2014)................................................................................................16

Case 1:15-cv-00274-MOC-DLH   Document 16-1   Filed 02/04/16   Page 3 of 34

*Califano v. Sanders*,
430 U.S. 99 (1977)...........................................................................................12

*California v. Deep Sea Research*,
523 U.S. 491 (1998)...........................................................................................5

*City of Boerne v. Flores*,
521 U.S. 507 (1997)....................................................................................13, 15

*Clapper v. Amnesty Int'l USA*,
133 S.Ct. 1138 (2013)......................................................................................11

*Cnty. of Sacramento v. Lewis*,
523 U.S. 833 (1998)..........................................................................................22

*Coll. Sav. Bank v. Florida Prepaid Postsecondary Education Expense Board*,
527 U.S. 666 (1999)...........................................................................................6

*Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Amos*,
483 U.S. 327 (1987)....................................................................................14, 15

*Cutter v. Wilkinson*,
544 U.S. 709 (2005)....................................................................................14, 15

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006)...........................................................................................6

*Doe v. Virginia Dep't of State Police*,
713 F.3d 745 (4th Cir. 2013) ...........................................................................12

*Doremus v. Bd. of Educ.*,
342 U.S. 429 (1952)...........................................................................................8

*DuBois v. Henderson Cnty. Bd. of Educ.*,
No. 13-131, 2014 WL 340475 (W.D.N.C. Jan. 30, 2014)....................................24

*Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP*,
213 F.3d 175 (4th Cir. 2000) .............................................................................5

*Ehlers-Renzi v. Connelly Sch. of the Holy Child, Inc.*,
224 F.3d 283 (4th Cir. 2000) ...........................................................................13

*Employment Div., Dep't of Human Resources v. Smith*,
    494 U.S. 872 (1990)......................................................................................14

*Flast v. Cohen*,
    392 U.S. 83 (1968)..........................................................................8, 9, 10, 11

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*,
    528 U.S. 167 (2000).........................................................................................7

*Front Royal & Warren Cnty. Industrial Park Corp. v. Town of Front Royal, Virginia*,
    135 F.3d 275 (4th Cir. 1998) ........................................................................22

*Frothingham v. Mellon*,
    262 U.S. 447 (1923).........................................................................................8

*Giarratano v. Johnson*,
    521 F.3d 298 (4th Cir. 2008) ........................................................................22

*Gen. Synod of the United Church of Christ v. Resinger*,
    No. 14-213 (W.D.N.C.) ..................................................................................2

*Hans v. Louisiana*,
    134 U.S. 1 (1890)............................................................................................6

*Harris v. McRae*,
    448 U.S. 297 (1980).......................................................................................17

*Hawkins v. Freeman*,
    195 F.3d 732 (4th Cir. 1999) ........................................................................23

*Hein v. Freedom From Religion Found., Inc.*,
    551 U.S. 587 (2007)............................................................................7, 8, 9, 10

*Hobbie v. Unemployment Appeals Comm'n of Fla.*,
    480 U.S. 136 (1987).......................................................................................13

*Lemon v. Kurtzman*,
    403 U.S. 602 (1971).................................................................................15, 16

*Liberty Univ., Inc. v. Lew*,
    733 F.3d 72 (4th Cir. 2013) ..........................................................................14

*Logan v. Zimmerman Brush Co.*,
   455 U.S. 422 (1982)...........................................................................24

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)............................................................................7

*Lynch v. Donnelly*,
   465 U.S. 668 (1984)......................................................................13, 15

*Madison v. Riter*,
   355 F.3d 310 (4th Cir. 2003) ...............................................13, 14, 15, 17

*McAdoo v. U.S.*,
   No. 14-239, 2015 WL 4757284 (W.D.N.C. Aug. 12, 2015) ....................4, 5

*McGowan v. Maryland*,
   366 U.S. 420 (1961)...........................................................................17

*Mellen v. Bunting*,
   327 F.3d 355 (4th Cir. 2003) ...............................................................15

*Moore-King v. City of Chesterfield*,
   708 F.3d 560 (4th Cir. 2013) ...............................................................23

*Morrison v. Garraghty*,
   239 F.3d 648 (4th Cir. 2001) .........................................................18, 21

*Moss v. Clark*,
   886 F.2d 686 (4th Cir. 1989) ...............................................................22

*Nordlinger v. Hahn*,
   505 U.S. 1 (1992)........................................................................18, 22

*Obergefell v. Hodges*,
   135 S.Ct. 2584 (2015)..........................................................17, 20, 21, 25

*Papasan v. Allain*,
   478 U.S. 265 (1986)............................................................................6

*Pennhurst State Sch. & Hosp. v. Halderman*,
   465 U.S. 89 (1984).............................................................................6

Case 1:15-cv-00274-MOC-DLH   Document 16-1   Filed 02/04/16   Page 6 of 34

**TABLE OF AUTHORITIES**
(continued)

*Personnel Adm'r of Mass. v. Feeney*,
    442 U.S. 256 (1979)..................................................................................................18

*Public Affairs Assocs., Inc. v. Rickover*,
    369 U.S. 111 (1962)..................................................................................................12

*Raines v. Byrd*,
    521 U.S. 811 (1997)....................................................................................................7

*Quern v. Jordan*,
    440 U.S. 332 (1979)....................................................................................................6

*Stone v. Univ. of Maryland Med. Sys. Corp.*,
    855 F.2d 167 (4th Cir. 1988) ...................................................................................24

*Suhre v. Haywood Cnty.*,
    131 F.3d 1083 (4th Cir. 1997) .................................................................................11

*Texas v. Johnson*,
    523 U.S. 296 (1998)..................................................................................................12

*Trent v. North Carolina*,
    No. 13-275, 2014 WL 2773579 (W.D.N.C. June 19, 2014)...............................6, 18

*U.S. v. Windsor*,
    133 S.Ct. 2675 (2013)..............................................................................................20

*Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*,
    454 U.S. 464 (1982)..........................................................................................7, 9, 11

*Veney v. Wyche*,
    293 F.3d 726 (4th Cir. 2002) ...................................................................................21

*Virginia Office for Protection & Advocacy v. Stewart*,
    563 U.S. 247 (2011)....................................................................................................6

*Walz v. Tax Comm'n*,
    397 U.S. 664 (1970)..................................................................................................14

*Wilkins v. Gaddy*,
    734 F.3d 344 (4th Cir. 2013) ...................................................................................23

Case 1:15-cv-00274-MOC-DLH   Document 16-1   Filed 02/04/16   Page 7 of 34

*Zorach v. Clauson*,
  343 U.S. 306 (1952)..................................................................................................15

**Constitutional Provisions**

U.S. CONST. amend I............................................................................................. *passim*

U.S. CONST. amend XI.................................................................................1, 4, 5, 6

U.S. CONST. amend XIV ....................................................................................... *passim*

**Statutes**

N.C. GEN. STAT. § 51-5.5..........................................................................................24

N.C. GEN. STAT. § 7A-292........................................................................................24

**Rules**

Fed. R. Civ. P. 12(b)(1).............................................................................................3, 4

Fed. R. Civ. P. 12(b)(6)................................................................................................4

**Other Authorities**

Michael W. McConnell, *The Origins and Historical Understanding of Free Exercise of Religion*,
  103 Harv. L. Rev. 1409 (1990) ................................................................................13

Case 1:15-cv-00274-MOC-DLH   Document 16-1   Filed 02/04/16   Page 8 of 34

Proposed Intervenor-Defendant North Carolina Magistrate Judge Brenda Bumgarner ("Bumgarner"), on behalf of herself and other similarly situated Jane and John Doe Magistrate Judges (collectively, "Magistrates"), by and through her undersigned counsel, respectfully submits this Memorandum of Law in Support of her Motion to Dismiss Plaintiffs' Complaint.

## I.  <u>INTRODUCTION</u>

Plaintiffs' Complaint is fatally flawed for several independent reasons and, therefore, should be dismissed. As an initial matter, this Court lacks subject matter jurisdiction over Plaintiffs' Complaint based upon the Eleventh Amendment and Plaintiffs' failure to establish Article III standing. The only defendant named in this action is the State of North Carolina, which has neither consented to this lawsuit nor had its sovereign immunity abrogated by Congress. Moreover, Plaintiffs do not possess the requisite standing to pursue their claims in this Court as North Carolina taxpayers. Generalized grievances of the sort contained in Plaintiffs' Complaint do not provide grounds for Article III standing, and Plaintiffs do not qualify for the "narrow exception" to this rule for certain alleged Establishment Clause violations. Nor can Plaintiffs' unsubstantiated rhetoric and unfounded smear campaign of North Carolina magistrates establish any direct and concrete injury to be addressed by a federal court.

Even if Plaintiffs' Complaint survives the multiple jurisdictional hurdles set forth above, it fails to state a viable claim under the Establishment, Equal Protection, or Due Process Clauses of the United States Constitution. Fundamentally, there is a long and well-recognized history of religious accommodation in this country, and, under Supreme Court and Fourth Circuit precedent, such accommodation does not violate the Establishment Clause, or any other constitutional provision. With respect to Plaintiffs' equal protection and due process claims, they fail to allege any actual facts showing that they were differently treated from persons who are similarly situated

1

or any infringement upon their own fundamental rights. In fact, the challenged statute – Senate Bill 2 – does not directly affect or impact any of the Plaintiffs involved in this lawsuit. Accordingly, for all the foregoing reasons, this Court should dismiss with prejudice Plaintiffs' Complaint.

## II.    PLAINTIFFS' ALLEGATIONS

On December 9, 2015, Plaintiffs—six alleged citizen taxpayers from the State of North Carolina—filed their Complaint against Defendant State of North Carolina ("State" or "Defendant") seeking a declaration that Senate Bill 2 violates the First and Fourteenth Amendments of the United States Constitution and asking this Court to "enjoin the North Carolina statute as unconstitutional." *See* D.E. 1, Compl., at 1, 19; *see also id.* at ¶¶ 1-3. Fundamentally, Plaintiffs challenge Magistrates' ability to exercise the statutory right of recusal from performing marriages, as provided under Senate Bill 2, which became law six months before Plaintiffs filed their lawsuit, and further claim that "[b]y opting out of performing marriages," Magistrates have "renounced their oath to uphold the United States Constitution." *Id.* at ¶¶ 50, 70. The bulk of Plaintiffs' Complaint consists of reciting the language of certain North Carolina constitutional provisions and general statutes, retelling their version of the procedural history and the immediate events surrounding this Court's decision in the entirely separate case of *Gen. Synod of the United Church of Christ v. Resinger*, No. 14-213 (W.D.N.C.), and detailing the language of Senate Bill 2, which became effective over the governor's veto. *Id.* at ¶¶ 10-63.

All of the Plaintiffs allege that Senate Bill 2 violates the Establishment Clause, based upon their "standing as state taxpayers" to "challenge a specific state law . . . that authorizes public spending for an expressed and primary religious purpose in violation of the First Amendment." *Id.* at ¶¶ 7, 80. Plaintiffs allege that the expenses that violate the Establishment Clause consists of the "expenditure of state funds" for the Administrative Office of the Courts to "arrange to bring a

willing magistrate from another county to perform marriages in the county" if "all of the magistrates in a given county recuse themselves due to a 'sincerely held religious objection' from performing marriages." *Id.* at ¶ 57. Plaintiffs also allege that any payments made by the State's Judicial Department "into the state retirement system" on behalf of reinstated magistrates who had previously resigned their position also violates the Establishment Clause. *Id.* at ¶¶ 58-59.

Four Plaintiffs also allege that Senate Bill 2, on its face and as-applied, violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment. *Id.* at ¶¶ 95, 103. These Plaintiffs do not allege any facts regarding any actual differing treatment they received as gay and lesbian citizens, or any infringement placed upon any fundamental rights by Senate Bill 2. Instead, Plaintiffs claim that Senate Bill 2's protection of Magistrates' religious freedom "harms third parties" and "sends a deliberate, purposeful and malicious message to gays and lesbians that they are not full citizens." *Id.* at ¶¶ 77, 89. Plaintiffs also claim that they "may have to appear" in certain civil or criminal proceedings before unknown Magistrates who have exercised their recusal right under Senate Bill 2, and Plaintiffs cannot "endure" this "risk" of having to appear in front of a person who holds certain religious beliefs. *Id.* at ¶¶ 96-97, 104-105 (emphasis added). They further contend that certain unidentified Magistrates allegedly "believe" that gay and lesbian citizens "are not entitled to the full rights of other citizens" and "deny gay and lesbian citizens equal treatment under the law." *Id.* at ¶¶ 96-97, 104. As a proposed intervenor on the side of Defendant, Bumgarner timely submits her response to Plaintiffs' Complaint pursuant to Rule 24(c).

## III.   <u>STANDARD OF REVIEW</u>

A Rule 12(b)(1) motion challenges a court's subject matter jurisdiction over a lawsuit. *Abdus-Salaam v. Bill Maddalon Unique S. Estates*, No. 11-410, 2012 WL 1569584, at *3 (W.D.N.C. May 3, 2012) (Cogburn, Jr., J.). A plaintiff bringing a lawsuit bears the burden of

establishing this Court's subject matter jurisdiction. *Id.* This Court has a "duty" to consider its subject matter jurisdiction before considering dismissal pursuant to Rule 12(b)(6), and this requirement is "absolute." *Boston v. Davis*, No. 11-450, 2011 WL 6935710, at \*3 (W.D.N.C. Dec. 29, 2011) (Cogburn, Jr., J.). Pursuant to Rule 12(b)(1), Plaintiffs' Complaint should be dismissed based upon the Eleventh Amendment and lack of Article III standing.

In comparison, a Rule 12(b)(6) motion tests the sufficiency of a complaint. Although the pleading standard set forth in Rule 8 does not require "detailed factual allegations" in a complaint, it nonetheless "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A plaintiff is obligated to assert the grounds upon which he is entitled to relief, and, in doing so, the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted); *see also McAdoo v. U.S.*, No. 14-239, 2015 WL 4757284, at \*2 (W.D.N.C. Aug. 12, 2015) (Cogburn, Jr., J.); *Brody v. N.C. State Bd. of Elections*, No. 10-383, 2011 WL 1843199, at \*3 (W.D.N.C. May 16, 2011) (Cogburn, Jr., J.). Instead, the complaint must outline with sufficient facts each element of the cause of action asserted. *Iqbal*, 556 U.S. at 678.

In order to survive a motion to dismiss, a cause of action must be supported by "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. A complaint that pleads facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557). A plaintiff must instead plead "factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct

alleged" to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level," and a plaintiff must provide the grounds for his entitlement to relief "rather than a blanket assertion of entitlement to relief." *Twombly*, 550 U.S. at 555-56 (citations omitted). "[N]aked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 556 U.S. at 678; *see also McAdoo*, 2015 WL 4757284, at *2; *Brody*, 2011 WL 1843199, at *3.

Furthermore, when evaluating the sufficiency of a complaint, although this Court must accept all factual allegations in a Complaint as true, this tenet is inapplicable to legal conclusions. *See McAdoo*, 2015 WL 4757284, at *2; *Brody*, 2011 WL 1843199, at *4; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Thus, pleadings that are no more than conclusions "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679; *see also Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP*, 213 F.3d 175, 180 (4th Cir. 2000) (a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments"). Indeed, as the Supreme Court explained, courts should not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. Even if Plaintiffs overcome the subject matter deficiencies in their pleading, Plaintiffs' Complaint should be dismissed because it fails to state a viable claim under the Establishment, Equal Protection, or Due Process Clauses of the Constitution.

## IV.    ARGUMENT

### A.    Plaintiffs' Complaint Is Barred By The Eleventh Amendment.

This Court lacks jurisdiction over the State because the State possesses immunity under the Eleventh Amendment. On its terms, the amendment is limited to suits against states by non-citizens; however, well-established Supreme Court precedent holds that "a State may not be sued in federal court by one of its own citizens." *California v. Deep Sea Research*, 523 U.S. 491, 501

5

(1998); *see also Hans v. Louisiana*, 134 U.S. 1 (1890). The only exceptions to this sovereign immunity are waiver by consenting to be sued or Congress' abrogation of such immunity by appropriate enforcement legislation pursuant to the Fourteenth Amendment, neither of which applies here. *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253-54 (2011); *Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Board*, 527 U.S. 666, 670 (1999); *see also Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court."); *Trent v. North Carolina*, No. 13-275, 2014 WL 2773579, at *6 (W.D.N.C. June 19, 2014) (Cogburn, Jr., J., affirming report and recommendation by Howell, M.J.). **The bar against private citizen lawsuits applies to all actions against a state, regardless of the relief sought**. *See Papasan v. Allain*, 478 U.S. 265, 276 (1986).

In this case, the State—the only named defendant—has not waived its sovereign immunity and no implementing legislation pursuant to Section 5 of the Fourteenth Amendment is at issue that abrogates such immunity. A state's waiver of immunity from suit in federal court must be clear and express. *Coll. Sav. Bank*, 527 U.S. at 676. Plaintiffs identify no such waiver in their Complaint. Moreover, Plaintiffs' Complaint rests upon 42 U.S.C. § 1983, but neither Section 1983 nor the Declaratory Judgment Act abrogates a state's sovereign immunity. *Quern v. Jordan*, 440 U.S. 332, 345 (1979); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984); *Green v. Mansour*, 474 U.S. 64, 73 (1985) (declaratory judgment "is not available" as a "partial 'end run' around" sovereign immunity). Accordingly, Plaintiffs' Complaint should be dismissed on sovereign immunity grounds under the Eleventh Amendment.

## B. Plaintiffs' Complaint Should Be Dismissed Because Plaintiffs Lack Standing.

Plaintiffs' Complaint should be dismissed because Plaintiffs lack Article III standing. Article III of the Constitution restricts judicial power to resolving "Cases" and "Controversies,"

6

and "'Article III standing . . . enforces the Constitution's case-or-controversy requirement.'" *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) (citation omitted). There is no principle "more fundamental to the judiciary's proper role in our system of government," *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (internal quotations and citation omitted), for judicial power "is not an unconditioned authority to determine the constitutionality of legislative or executive acts." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). "The federal courts are not empowered to seek out and strike down any governmental act that they deem to be repugnant to the Constitution. Rather, federal courts sit 'solely, to decide on the rights of individuals, and must refrain from passing upon the constitutionality of an act . . . unless obliged to do so in the proper performance of our judicial function, when the question is raised by a party whose interests entitle him to raise it." *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 598 (2007) (plurality op.) (internal quotations and citations omitted). Therefore, "[s]tanding is a threshold issue of jurisdiction," *Boston*, 2011 WL 6935710, at *3, and a plaintiff "must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 185 (2000). The elements for Article III standing are well-established. *Allen v. Wright*, 468 U.S. 737, 751 (1984). The Court explained these minimum constitutional requirements in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992):

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "'redressed by a favorable decision.'"

*Id.* at 560-61.

1. **Plaintiffs Lack Taxpayer Standing For Their Establishment Clause Claims.**

As a general matter, "standing cannot be based on a plaintiff's mere status as a taxpayer." *Ariz. Christian Sch. Tuition Org. v. Winn*, 131 S.Ct. 1436, 1442 (2011); *see also Doremus v. Bd. of Educ.*, 342 U.S. 429, 433 (1952) ("This Court has held that the interests of a taxpayer in the moneys of the federal treasury are too indeterminable, remote, uncertain and indirect to furnish a basis for an appeal to the preventive powers of the Court over their manner of expenditure."). "The party who invokes the power [of judicial review] must be able to show not only that the statute is invalid but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally." *Doremus*, 342 U.S. at 434 (quoting *Frothingham v. Mellon*, 262 U.S. 447, 488 (1923)). Moreover, the Court has rejected the notion that an individual taxpayer has a "continuing legally cognizable interest in ensuring that those funds are not *used* by the Government in a way that violates the Constitution." *Hein*, 551 U.S. at 599 (emphasis in original). The general prohibition on taxpayer standing is "designed both to avoid speculation and to insist on particular injury." *Winn*, 131 S.Ct. at 1444-45.

According to their own allegations, Plaintiffs' sole basis for purported standing in their Complaint appears to be the "narrow exception to the general rule against taxpayer standing," *Winn*, 563 U.S. at 130, created by the Supreme Court in *Flast v. Cohen*, 392 U.S. 83 (1968). *See* D.E. 1, Compl., ¶ 7 (claiming that "Plaintiffs have standing as state taxpayers under *Flast…*, as they challenge a specific state law—known as Senate Bill 2"). For this limited exception to apply, however, two critical conditions must be strictly satisfied. First, "the taxpayer must establish a logical link between that status and the type of legislative enactment attacked." *Flast*, 392 U.S. at 102. Under this requirement, a plaintiff taxpayer could only challenge Congress' Tax and Spend

8

Power and it would "not be sufficient to allege an incidental expenditure of tax funds in the administration of an essentially regulatory statute." *Id.* Second, "the taxpayer must establish a nexus between that status and the precise nature of the constitutional infringement alleged." *Id.* Under this requirement, a plaintiff taxpayer must demonstrate that the enactment "exceeds specific constitutional limitations" on Congress' Tax and Spend Power and "not simply that the enactment is generally beyond the powers delegated to Congress by Art. I, § 8." *Id.* at 102-03.

In the years since the *Flast* exception to taxpayer standing was recognized, the Supreme Court has consistently and strictly limited the applicability of this exception. *See*, *e.g.*, *Winn*, 563 U.S. at 142-46 (holding no taxpayer standing in Establishment Clause challenge to state law that allegedly subsidized scholarships to attend religious schools); *Hein*, 551 U.S. at 605-06 (holding no taxpayer standing in Establishment Clause challenge to federal executive actions funded by general appropriations); *Valley Forge*, 454 U.S. at 479-80 (holding no taxpayer standing in Establishment Clause challenge to federal agency's decision to convey government land to a private religious college). In essence, the *Flast* exception has been limited on **direct legislative outlays** and "specific congressional appropriation[s]" that move government money from the treasury **to a religious institution or entity**. *Hein*, 551 U.S. at 603-04.

Critically, no such transfer happens under Senate Bill 2. The statute does not directly fund religious activities from the treasury. Instead, the only expenses allegedly incurred go to funding the officiation of marriages in the State of North Carolina, or contributing to the retirement accounts of state employees.[1] These expenses are a far cry from the particular taxpayer injury

---

[1]    Senate Bill 2's provision relating to understandings in the state retirement system applies to "[a]**ny magistrate** who resigned, or was terminated from, his or her office between October 6, 2014" and June 11, 2015, and who was "subsequently reappointed as a magistrate" by early September 2015. *See* N.C. Senate Bill 2, Session Law 2015-75, § 5. Plaintiffs' Complaint identifies no individuals qualifying thereunder. Even so, the provision granting continuous service credit to

recognized in *Flast*, in which, by means of the Tax and Spend Power, taxpayers' "property is transferred through the Government's Treasury **to a sectarian entity**." *See Winn*, 563 U.S. at 139 (citing *Flast*, 393 U.S. at 105-06) (emphasis added). Indeed, "what matters under *Flast*" is whether "sectarian" entities "receive government funds drawn from general tax revenues, so that moneys have been extracted from a citizen and **handed to a religious institution in violation of the citizen's conscience**." *Winn*, 563 U.S. at 144 (emphasis added); *see also Hein*, 551 U.S. at 603 (distinguishing the congressional act at issue in *Flast*, which "**expressly appropriated the sum of $100 million** for fiscal year 1966") (emphasis added). That concern is not presented here. The State only incurs expenses in the hypothetical case that **all** of the magistrates in a particular county, based upon their unilateral and independent decisions, exercise their statutory right of recusal, or, if a magistrate who resigned or was terminated is reappointed and granted continuous service credit for retirement purposes. And, those hypothetical expenses, if actually incurred, would in no way be transferred to a religious entity.

At bottom, Senate Bill 2 is more akin to the tax credit in *Winn*, where no standing was found, than the congressional statute at issue in *Flast*, which "expressly" and "specific[ally]" directed federal funds to support religious schools and to buy materials for religious schools. Indeed, any hypothetical expenditures, if ever incurred, would be "incidental" to the administration of the statute, not specific government funds directed to a private religious entity. Because Plaintiffs do not qualify for the "narrow exception" to taxpayer standing permitted under *Flast*,

---

any such qualifying magistrate does not depend upon any particular religious belief and does not fund (directly or indirectly) any religious activity or any religious entity.

they do not possess Article III standing and their case does not present a justiciable case-or-controversy under the Establishment Clause.[2]

### 2. Plaintiffs Lack Standing For Their Equal Protection And Due Process Claims.

Plaintiffs also lack standing to pursue their Equal Protection and Due Process claims, which rely entirely upon conclusory allegations and speculative declarations of a hypothetical "risk" that Plaintiffs "may have to appear" before a Magistrate that has exercised his or her statutory right to recusal from performing marriages. *See* D.E. 1, Compl., at ¶¶ 96-98, 104. **No such imminent, let alone, actual exposure is alleged, nor can Plaintiffs allege that they have actually suffered unconstitutional treatment from any Magistrate**. *See id.* at ¶¶ 93-110. The Supreme Court has "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138, 1147 (2013) (citation omitted) (emphasis in original). Yet Plaintiffs' claims for declaratory relief rest entirely "upon 'assumed potential invasions' of rights" and a "hypothetical state of facts," which are insufficient to warrant judicial intervention under the Declaratory Judgment Act. *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 325 (1936).[3]

---

[2] The Fourth Circuit has acknowledged that "the concept of injury for standing purposes is particularly elusive in Establishment Clause cases." *Suhre v. Haywood Cnty.*, 131 F.3d 1083, 1085 (4th Cir. 1997). But like any other alleged constitutional injury, a plaintiff alleging a violation of the Establishment Clause, absent the application of the narrow *Flast* exception, must establish a "direct injury" and must present more than a "mere abstract objection to unconstitutional conduct," such as being "subject to unwelcome religious exercises" or being "forced to assume special burdens to avoid them." *Suhre*, 131 F.3d at 1086 (citation omitted). Here, Plaintiffs do not allege any "direct injury" in their Complaint and the Supreme Court has held that "the psychological consequence presumably produced by observation of conduct with which one disagrees"—in this case the act of claiming a religious accommodation—"is not an injury sufficient to confer standing under Art. III." *See Valley Forge*, 454 U.S. at 485.

[3] This Court should also dismiss Plaintiffs' as-applied claims under the ripeness doctrine, which prevents courts "from entangling themselves in abstract disagreements" by avoiding "premature adjudication." *Abbott Labs v. Gardner*, 387 U.S. 136, 148 (1967), *overruled on other*

11

Plaintiffs generically claim that they "may have to appear" in certain civil or criminal proceedings before Magistrates who have exercised their recusal right under Senate Bill 2, and Plaintiffs cannot "endure" this "risk" of having to appear in front of a person who holds certain religious beliefs. *See* D.E. 1, Compl., at ¶¶ 96-97, 104-105 (emphasis added). Such alleged "risk" does not constitute the requisite concrete, particularized, actual, or imminent injury. Critically, Plaintiffs do not allege that any actual constitutional or fundamental right has been burdened, let alone infringed. **Plaintiffs do not come even close to alleging that they were prevented or even substantially burdened from marrying the person of their choice because of Senate Bill 2**. This is not surprising, since the overwhelming majority of North Carolina magistrates have **not** sought recusal and remain available and willing to perform lawful marriages. Instead, in their Complaint, Plaintiffs concoct feigned claims of allegedly hidden biases of unidentified Magistrates that are purportedly trafficking in courtrooms across the State of North Carolina, but such alleged hidden biases cannot be eradicated by the relief they seek in this lawsuit, nor do Plaintiffs even plead any plausible facts that such biases even exist. As such, Plaintiffs' conclusory allegations are naked assertions devoid of any actual or threatened impending injury that is certain to occur and depend wholly upon speculation. Accordingly, this Court must dismiss Plaintiffs' Complaint for lack of Article III standing.

---

grounds by *Califano v. Sanders*, 430 U.S. 99 (1977). "A claim should be dismissed as unripe if the plaintiff has not yet suffered injury and any future impact 'remains wholly speculative.'" *Doe v. Virginia Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013) (citation omitted). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. Johnson*, 523 U.S. 296, 300 (1998) (internal quotations omitted). This conclusion is further warranted here, where Plaintiffs' Complaint seeks only declaratory relief. *Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962) (holding that "[t]he Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.").

12

## C.    Plaintiffs' Complaint Fails To State An Establishment Clause Claim.

Plaintiffs' Complaint, in Count I, fails to state a viable claim under the Establishment Clause. The First Amendment is "designed to protect religious liberty," not suppress it. *Brown v. Gilmore*, 258 F.3d 265, 273 (4th Cir. 2001). Moreover, "[o]ur society has a long history of accommodation with respect to matters of belief and conscience," and "there must be room to accommodate belief and faith within the law." *Madison v. Riter*, 355 F.3d 310, 321-22 (4th Cir. 2003); *see also City of Boerne v. Flores*, 521 U.S. 507, 558 (1997) (O'Connor, J., dissenting op.) ("[L]ong before the First Amendment was ratified, legislative accommodations were a common response to conflicts between religious practice and civil obligation.") (citing Michael W. McConnell, *The Origins and Historical Understanding of Free Exercise of Religion*, 103 HARV. L. REV. 1409 (1990)).

Religious accommodation is not only permitted under the law—at times it is **required** by the Constitution. *Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 144-45 (1987) ("[G]overnment may (and sometimes must) accommodate religious practices and that it may do so without violating the Establishment Clause."); *Lynch v. Donnelly*, 465 U.S. 668, 673 (1984) (the Constitution "affirmatively mandates accommodation, not merely tolerance, of all religions"); *see also Ehlers-Renzi v. Connelly Sch. of the Holy Child, Inc.*, 224 F.3d 283, 287 (4th Cir. 2000) ("This authorized, and sometimes mandatory, accommodation of religion is a necessary aspect of the Establishment Clause jurisprudence because, without it, government would find itself effectively and unconstitutionally promoting the absence of religion over its practice."). This explains why the Supreme Court has routinely "upheld a broad range of statutory religious accommodations against Establishment-Clause challenges." *Brown*, 258 F.3d at 275.

But even if accommodation is not constitutionally required, the Establishment Clause certainly does not "preclude a government from 'accommodating' religious scruple by, for

13

example, voluntarily exempting those with the particular religious scruple from the burden imposed by the legislation, even though the Constitution would not, in that circumstance, oblige an accommodation." *Brown*, 258 F.3d at 274 (citing *Employment Div., Dep't of Human Resources v. Smith*, 494 U.S. 872, 890 (1990)); *see also Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) (holding that the Religious Land Use and Institutionalized Persons Act "[o]n its face" qualified "as a permissible legislative accommodation of religion that is not barred by the Establishment Clause"); *Bd. of Educ. of Kiryas Joel Village Sch. Dist. v. Grumet*, 512 U.S. 687, 705 (1994) ("the Constitution allows the State to accommodate religious needs by alleviating special burdens"); *Smith*, 494 U.S. at 890 ("[A] society that believes in the negative protection accorded to religious belief can be expected to be solicitous of that value in its legislation . . ."); *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327, 338 (1987) (there is "ample room for accommodation of religion under the Establishment Clause"); *Bowen v. Roy*, 476 U.S. 693, 712 n.19 (1986) (noting that "[a]s a matter of legislative policy, a legislature might decide to make religious accommodations to a general and neutral system," and such an "exemption" to accommodate religious beliefs "would not violate the First Amendment's Establishment Clause"); *Liberty Univ., Inc. v. Lew*, 733 F.3d 72, 101 (4th Cir. 2013) (noting that the "mere existence of religious exemptions in a statute poses no constitutional problem"); *Madison*, 355 F.3d at 322 ("[L]egislative bodies have every right to accommodate free exercise, so long as government does not privilege any faith, belief, or religious viewpoint in particular.") (citing *Kiryas Joel*, 512 U.S. at 696-97).

"Grants of exemption historically . . . guard against" the danger of "hostility toward religion." *Walz v. Tax Comm'n*, 397 U.S. 664, 673 (1970). Rather than suppressing religious belief, it is "singled out in the Constitution for the special protections contained in the Religion Clauses."

*Brown*, 258 F.3d at 274; *see also Mellen v. Bunting*, 327 F.3d 355, 366 (4th Cir. 2003) ("[T]he First Amendment's Religion Clauses mean that religious beliefs and religious expression are too precious to be either proscribed or prescribed by the State."). As such, the First Amendment "must not be interpreted with a view that religion be suppressed in the public arenas in favor of secularism." *Brown*, 258 F.3d at 274.[4] Also, "[r]eligious accommodations . . . need not 'come packaged with benefits to secular entities,'" to survive a facial challenge under the Establishment Clause. *Cutter*, 544 U.S. at 724 (citing *Amos*, 483 U.S. at 338); *see also Madison*, 355 F.3d at 318 ("There is no requirement that legislative protections for fundamental rights march in lockstep.").

Under the weight of the foregoing authority, Senate Bill 2, on its face, is a permissible legislative accommodation not barred, and arguably required, by the Establishment Clause. Similar to the Supreme Court in *Cutter*, this conclusion can (and should) be reached by this Court without evaluating Senate Bill 2 under the three-prong "*Lemon* test." *See Cutter*, 544 U.S. at 726-27 ("The Court properly declines to assess RLUIPA under the discredited test of *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105 (1971)…") (Thomas, J., concurring). That conclusion is further warranted here, where the permissible legislative accommodation is created by a State rather than the federal government. *Cf. Boerne*, 521 U.S. at 511 (holding that the Religious Freedom Restoration Act "exceeds Congress' power" under the Fourteenth Amendment). Thus, a State's authority to intervene to lift burdens on religious freedom is even broader than Congress' power. Under this broad power, as well as North Carolina's constitutional mandate that "no human authority shall, in any case whatever, control or interfere with the rights of conscience," N.C. CONST., Art. I, § 13,

---

[4]     *See also Lynch*, 465 U.S. at 673 (concluding "[a]nything less would require the 'callous indifference' we have said was never intended by the Establishment Clause"); *Zorach v. Clauson*, 343 U.S. 306, 314 (1952) (recognizing that if government could not "respect [] the religious nature of our people and accommodate[] the public service to their spiritual needs," that would constitute a preference for "those who believe in no religion over those who do believe").

15

among other obligations, the State had ample prerogative to protect its employees' religious rights and conscience.

At root, Plaintiffs claim that Senate Bill 2 violates the Establishment Clause because it provides religious accommodation for Bumgarner and other Magistrates. But this view ignores a long and well-recognized history of religious accommodation in this country and Supreme Court precedent, and seeks to undo and unravel any and all religious freedom protections (whether by statute or executive action) as constitutionally defective under the Establishment Clause. In Plaintiffs' view, no religious protections survive the Establishment Clause if even one red cent is spent to effectuate an accommodation. However, Plaintiffs' position that the Establishment Clause invalidates the spending of "even a small amount" which protects religious freedom "reflects a judgment about the importance of religious liberty," *Burwell v. Hobby Lobby Stores, Inc.*, 134 S.Ct. 2751, 2781 (2014), that is not shared by the North Carolina legislature nor accepted by the Supreme Court in its multiple decisions rejecting Establishment Clause challenges to religious accommodations. In fact, dollars spent to protect religious **accommodation** cannot be deemed an Establishment Clause violation if certain statutes (*e.g.*, RFRA or RLUIPA) actually "require the Government to expend additional funds to accommodate" religious beliefs (*Hobby Lobby*, 134 S.Ct. at 2781)—otherwise, such mandatory government spending to accommodate religious beliefs would be per se disallowed. Accordingly, this Court should conclude that Senate Bill 2, on its face, is a permissible legislative accommodation and should dismiss Plaintiffs' Complaint.

Even if this Court considers the *Lemon* test, which it need not do as set forth above, Senate Bill 2 easily withstands constitutional scrutiny. Beyond mere legal conclusions in their Complaint—which this Court need not heed—Plaintiffs allege no actual facts establishing an Establishment Clause violation. As for the legislative purpose of Senate Bill 2, just as Congress

16

"can intervene to lift governmental burdens on religious exercise," so too may the North Carolina legislature. *See Madison*, 355 F.3d at 319. Plainly on the face of the statute, Senate Bill 2 does not favor one religious sect or denomination over another, and does not adopt a particular religious view by government. Moreover, the sincerely held religious beliefs protected by Senate Bill 2 happen to coincide with a view regarding the nature of marriage that "long has been held—**and continues to be held—in good faith by reasonable and sincere people here and throughout the world**." *Obergefell v. Hodges*, 135 S.Ct. 2584, 2594 (2015) (emphasis added). Thus, Plaintiffs' Complaint amounts to nothing more than a specious attempt to vilify Bumgarner and other similarly situated Magistrates for their "personal" beliefs and create a religious (or anti-religious) test for holding public office, in contravention of the United States Constitution.

As for the effect of Senate Bill 2, it does not advance religion any more than the long and well-established history of religious accommodation that the Supreme Court and Fourth Circuit have upheld. Moreover, it does not establish or advance a "government religion" because the accommodations are made to otherwise generally applicable duties for magistrates. Also, Senate Bill 2 does not dictate or mandate that nonbeneficiaries of the statute must believe the same as those persons taking the accommodation. In fact, Senate Bill 2 actually preempts a conflict by recusing certain persons from performing marriages altogether. Accordingly, Senate Bill 2 establishes no religion at all because it does not require any magistrate (or citizen) to exercise a certain belief or no belief; nor does it force any magistrate (or citizen) to participate in any other magistrate's religious belief or non-belief. Furthermore, a statute does not constitute an impermissible purpose in violation of the Establishment Clause simply because any of its outcomes "'happen[] to coincide or harmonize with the tenets of some or all religions.'" *Harris v. McRae*, 448 U.S. 297, 319-20 (1980) (quoting *McGowan v. Maryland*, 366 U.S. 420, 442 (1961)).

Case 1:15-cv-00274-MOC-DLH   Document 16-1   Filed 02/04/16   Page 25 of 34

Finally, contrary to Plaintiffs' suggestion, Senate Bill 2 does not require excessive government entanglement with religion by establishing a "sincerity test" for magistrates. *See* D.E. 1, Compl., at ¶ 88. The uniform recusal form is a one-page, self-certifying document submitted by a magistrate on their own initiative.[5] The form does not require the Magistrate to identify their religious beliefs or describe such beliefs. A Magistrate's completion of the form will trigger certain actions by a local district judge but those actions are not related to any ongoing entanglement with religion, or an individual's religious beliefs. Accordingly, Plaintiffs' Complaint fails to state an actionable claim under the Establishment Clause.

### D.    Plaintiffs' Complaint Fails To State An Equal Protection Claim.

Plaintiffs' Complaint also fails to state a viable claim in Count II under the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause "does not take from the States all power of classification," *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 271 (1979), but "simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny" *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001); *see also Trent*, 2014 WL 2773579, at *7.

Plaintiffs assert both facial and as-applied challenges to Senate Bill 2 on equal protection grounds, apparently as "gay and lesbian citizens of North Carolina." *See* D.E. 1, Compl., at ¶ 95.

---

[5]    This opt-out form, which is implicitly referenced in Plaintiffs' Complaint but not attached to the Complaint, is publicly available for download on the State's website for its Court system at: http://www.nccourts.org/Forms/Documents/1662.pdf (last accessed Feb. 4, 2016).

18

Plaintiffs' facial challenge can be easily discarded because their Complaint fails to allege any facts demonstrating that Plaintiffs—or any other gay and lesbian citizens—were treated differently from others with whom they are similarly situated, and that such treatment (which they do not even allege) was the result of intentional or purposeful discrimination. Instead, to the extent Plaintiffs' Complaint includes any allegations of disparate treatment, it is naked speculation of what "may" happen under hypothetical circumstances and fears in the distant and unspecified future, devoid of any actual facts. On its face, Senate Bill 2 provides no distinction whatsoever between "gay and lesbian citizens" and all other citizens of North Carolina. **The law does not allow magistrate recusal from only same-sex marriages, but requires that any recusal be from all marriages**. Therefore, Senate Bill 2 does not discriminate on the basis of any suspect class of persons involved in this litigation. Moreover, on its face, Senate Bill 2 does not bar anyone from being married in North Carolina and all couples are treated the same under the statute. Plaintiffs' facial challenge is fatally flawed, and must be dismissed.

Plaintiffs' as-applied challenges also fail as a matter of law. Importantly, Plaintiffs claim they "**may have to appear**" in certain civil or criminal proceedings before unidentified Magistrates who may have exercised their recusal right under Senate Bill 2 and they cannot "risk" having to appear in front of a person who holds certain religious beliefs. *See* D.E. 1, Compl., at ¶¶ 96-97 (emphasis added). This contention is pure speculation, as is their corollary assertion that unidentified Magistrates "believe" that gay and lesbian citizens "are not entitled to the full rights of other citizens" and "deny gay and lesbian citizens equal treatment under the law." *See id.* at ¶¶ 96-98. The problem with Plaintiffs' claim—in addition to being unvarnished *ad hominem* attacks—is that Plaintiffs point to no actual facts of being "single[d] out" by any Magistrate or the State, *id.* at ¶ 98, and no actual facts identifying a denial of any fundamental right by any Magistrate

or the State. In fact, Plaintiffs Ansley and McGaughey admit in their Complaint that they are already married, and although Plaintiffs Penn and Goodman are apparently only engaged, they plead no facts alleging any actual legal barriers to marrying whom they want in North Carolina or securing a valid marriage license, let alone a barrier resulting from Senate Bill 2. *Id.* at ¶¶ 1, 3.

To overcome these obvious pleading deficiencies, Plaintiffs' last-ditch claim is that Senate Bill 2 constitutes "malice and animus" directed to the "fundamental right and equal dignity of marriage for gays and lesbians" pursuant to the Supreme Court's opinion in *Obergefell*. D.E. 1, Compl., at ¶ 98. Plaintiffs' claims ignore the Court's conclusion that marriage law has "long been regarded as a virtually exclusive province of the States," *U.S. v. Windsor*, 133 S.Ct. 2675, 2689-91 (2013), and many of those States, such as North Carolina, embed religious accommodation rights within a generally applicable marriage licensing scheme. At bottom, the majority in *Obergefell* reached two conclusions about the right to marry under the Fourteenth Amendment: (1) States may not absolutely bar an individual from marrying a person of the same-sex, and (2) States that recognize marriage, or provide benefits related to marriage, must do so on the same terms and conditions for same-sex couples as opposite sex couples. *Obergefell*, 135 S.Ct. at 2604-05. Neither of these conclusions is directly implicated by Senate Bill 2, which does not bar anyone from being married and does not treat same-sex couples differently than opposite sex couples. Nor does *Obergefell* stand for the proposition that Plaintiffs seek to establish—*i.e.*, that they have an absolute right to demand that a particular person in a particular county must, as a matter of federal constitutional law, approve of, participate in, endorse, celebrate, and solemnize their proposed union, regardless of that person's sincerely held religious beliefs and irrespective of the State's simple accommodation of those beliefs without substantially burdening anyone else in the exercise

of their right to marry. Opposite sex couples did not enjoy such a right before *Obergefell*, and the Court's opinion did not grant any such right to same-sex couples following *Obergefell*.

Instead, the Supreme Court unanimously agreed that First Amendment protections remain despite same-sex "marriage." Specifically, dissenting justices recognized that "[m]any good and decent people oppose same-sex marriage as a tenet of faith, and their freedom to exercise religion" is specifically "spelled out" in the First Amendment of the Constitution. *Obergefell*, 135 S.Ct. at 2625 (Roberts, C.J., dissenting). Continuing, these Justices noted that "**[r]espect for sincere religious conviction has led voters and legislators in every State that has adopted same-sex marriage democratically to include accommodations for religious practice**." *Id.*; *see also id.* at 2638 (explaining the historical significance of "religious liberty") (Thomas, J., dissenting). The majority itself plainly recognized that religious freedoms continue unabated even as it redefined marriage. *Id.* at 2607 ("**persons**" continue to have First Amendment protections) (Kennedy, J.) (emphasis added). Thus, religious accommodation does not constitute intentional or purposeful discrimination against any suspect class of persons.

Because Plaintiffs fail to establish any actual disparate treatment of a suspect class or any substantial burden on any fundamental right resulting from (or intended by) Senate Bill 2, this Court need not even reach the second step of an equal protection analysis. *See Morrison*, 239 F.3d at 654 (courts only apply the appropriate constitutional scrutiny "[o]nce this showing [of unequal treatment] is made"). Nonetheless, even if this Court proceeds to this step, because Plaintiffs do not identify any classification in Senate Bill 2 requiring strict scrutiny review, the legislation "is presumed to be valid and will be sustained 'if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.'" *Veney v. Wyche*, 293 F.3d 726, 731 (4th Cir. 2002) (internal quotations and citation omitted). "Under this deferential standard, the plaintiff

bears the burden 'to negate every conceivable basis which might support' the legislation." *Giarratano v. Johnson*, 521 F.3d 298, 303 (4th Cir. 2008) (citation omitted). "While [the Court] [] must take as true all of the complaint's allegations and reasonable inferences that follow, [it] appl[ies] the resulting 'facts' in the light of the deferential rational basis standard," and a "plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications" to avoid dismissal. *Id.* at 303-04 (citation omitted).

Plaintiffs' Complaint does not even come close to providing sufficient factual allegations to overcome the presumption of reasonableness and rationality applied to Senate Bill 2. *See Nordlinger*, 505 U.S. at 10 ("[L]egislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality."); *Moss v. Clark*, 886 F.2d 686, 689 (4th Cir. 1989) ("Laws are presumed to be constitutional under the equal protection clause for the simple reason that classification is the very essence of the art of legislation."). As discussed in detail above, Plaintiffs ignore the State's legitimate interests in providing religious accommodations to its employees and citizens, which alone justifies the enactment of Senate Bill 2. Accordingly, Plaintiffs' equal protection claim fails as a matter of law.

## E.    Plaintiffs' Complaint Fails To State A Due Process Claim.

Plaintiffs' Complaint also fails to state a viable substantive due process claim in Count III under the Due Process Clause of the Fourteenth Amendment. "The touchstone of due process is protection of the individual against arbitrary action of the government." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). The Fourth Circuit defines substantive due process as "an absolute check on certain governmental actions notwithstanding the fairness of the procedures used to implement those actions." *Front Royal & Warren Cnty. Indus. Park Corp. v. Town of Front Royal, Va.*, 135 F.3d 275, 287-88 (4th Cir. 1998) (internal quotation omitted). This check "is warranted only where *no process* could cure the deficiencies in the governmental action"—*i.e.*,

22

where "the resulting deprivation of life, liberty, or property is so unjust that no amount of fair procedure can rectify it." *Id.* at 288 (emphasis in original). Federal courts "must be reluctant to expand the concept of substantive due process because guideposts for responsible decision-making in this uncharted area are scarce and open-ended, which means that the courts must exercise the utmost care whenever we are asked to break new ground in this field, lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of [judges]." *Hawkins v. Freeman*, 195 F.3d 732, 738 (4th Cir. 1999) (internal citations and quotations omitted).

The method by which this Court evaluates substantive due process claims depends upon "whether the claimed [due process] violation is by executive act or legislative enactment . . . because there are different 'criteria' for determining whether executive acts and legislative acts are 'fatally arbitrary,' an essential element of any substantive due process claim." *Id.* (citation omitted). For legislative enactments such as Senate Bill 2, judicial review involves two steps. First, the Court must determine "whether the claimed violation involves one of those 'fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition,' and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed.'" *Id.* at 739 (citation omitted). This requires "a 'careful description' of the asserted liberty right or interest that avoids overgeneralization in the historical inquiry." *Id.* at 747 (citation omitted). Second, if the asserted interest is deemed "fundamental," the court applies strict scrutiny review to the challenged legislation, but if the interest is determined not to be "fundamental," then the legislation is subject only to rational basis review. *Id.* at 739. As discussed above, rational basis review is "quite deferential," *Wilkins v. Gaddy*, 734 F.3d 344, 347-48 (4th Cir. 2013), and so long as "there is any reasonably conceivable state of facts" to support the statute, it survives. *Moore-King v. City of Chesterfield*, 708 F.3d 560, 572 (4th Cir. 2013) (citation omitted).

Plaintiffs' facial challenge on substantive due process grounds can be discarded as matter of law for many of the same reasons discussed above. On its face, Senate Bill 2 does not violate any person's constitutional rights. No gay or lesbian citizen is denied any governmental service by Senate Bill 2. Instead, Senate Bill 2 ensures that marriage licenses must be available at least 10 hours per week in each county and on at least three different business days, N.C. GEN. STAT. § 51-5.5(c); N.C. GEN. STAT. § 7A-292(b), and enacts no judicial bar to equal access to North Carolina courts. By its plain terms, Senate Bill 2 does not deny "potential litigants use of established adjudicatory procedures" or bar any person from seeking "recourse in the courts" or being given "an opportunity to be heard upon their claimed right[s]." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 429-30 (1982) (citation omitted). Nor does Senate Bill 2 enact any actual legal barriers that prevent a person from marrying whom they want in the State of North Carolina or securing a valid marriage license. As such, Plaintiffs have failed to show the requisite prima facie entitlement to the protections of the Due Process Clause because they have failed to show a constitutionally protected interest that "has been 'deprived' . . . by some form of 'state action.'" *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988) (internal citations omitted); *see also DuBois v. Henderson Cnty. Bd. of Educ.*, No. 13-131, 2014 WL 340475, at *5 (W.D.N.C. Jan. 30, 2014) (Reidinger, J.). Without such deprivation, "the question of what process is required and whether any [process] provided could be adequate in the particular factual context is irrelevant, for the constitutional right to 'due process' is simply not implicated." *Stone*, 855 F.2d at 172.

Plaintiffs' as-applied due process claims fare no better. Like their factually vacant equal protection allegations, Plaintiffs' substantive due process claims are based upon conclusory allegations and pure speculation. Plaintiffs claim they "**may have to appear**" in certain civil or criminal proceedings before unidentified Magistrates who have exercised their recusal right under

24

Senate Bill 2, and they cannot "endure" having to appear in front of a person who holds certain religious beliefs. *See* D.E. 1, Compl., at ¶¶ 104-105 (emphasis added). This contention is pure speculation, as is their corollary assertion that unidentified Magistrates "believe" that gay and lesbian citizens "are not entitled to the full rights of other citizens" and "deny the full constitutional rights of gay and lesbian citizens." *See id.* at ¶¶ 104, 106. Plaintiffs further contend that Senate Bill 2 denies "gay and lesbian citizens their fundamental right to government services," and constitutes "malice and animus" directed to the "substantive due process rights of gays and lesbians" pursuant to the Supreme Court's opinion in *Obergefell*. *Id.* at ¶¶ 108-109. But Plaintiffs point to no actual denial of any identified government service or any fundamental right that has been sacrificed. To the contrary, Senate Bill 2 affirms a fundamental right that is deeply rooted in this Nation's history and implicit in the concept of ordered liberty: religious accommodation. As a result, their substantive due process claim must correspondingly fail as a matter of law.

## V.    <u>CONCLUSION</u>

For all the foregoing reasons, Bumgarner's Motion to Dismiss Plaintiffs' Complaint should be granted, and Plaintiffs' Complaint should be dismissed with prejudice.

DATED: February 4, 2016                    Respectfully submitted:

/s/ Jonathan D. Christman                  /s/ Stuart D. Sloan
Horatio G. Mihet*                          Stuart D. Sloan
Jonathan D. Christman*                     Kenney Sloan & VanHook, PLLC
Liberty Counsel                            111 Heritage hollow Drive
P.O. Box 540774                            Franklin, NC 28734
Orlando, Florida 32854                     Tel: (828) 276-1177
Tel: (407) 875-1776                        Fax: (828) 276-1178
Fax: (407) 875-0770                        stu@ksvlaw.com
hmihet@lc.org
jchristman@lc.org
 *Motion for pro hac vice admission pending*    *Attorneys for Brenda Bumgarner*

25

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed via the Court's ECF filing system and therefore service will be effectuated by the Court's electronic notification system upon all counsel or parties of record:

S. Luke Largess
Jacob H. Sussman
John W. Gresham
TIN FULTON WALKER & OWEN, PLLC
301 East Park Avenue
Charlotte, NC 28203
llargess@tinfulton.com
jsussman@tinfulton.com
jgresham@tinfulton.com

Olga E. Vysotskaya de Brito
Amar Majmundar
Special Deputy Attorney General
N.C. Department of Justice
P.O. Box 629
Raleigh, NC 27602
ovysotskaya@ncdoj.gov
amajmundar@ncdoj.gov

Katherine Lewis Parker
TIN FULTON WALKER & OWEN, PLLC
1213 Culbreth Drive
Wilmington, NC 28405
kparker@tinfulton.com

*Attorneys for Defendant State of North Carolina*

Meghann Burke
BRAZIL & BURKE, P.A.
77 Central Avenue, Suite E
Asheville, NC 28801
meghann@brazilburkelaw.com

*Attorneys for Plaintiffs*

DATED: February 4, 2016

/s/ Stuart D. Sloan
Stuart D. Sloan
*Attorney for Brenda Bumgarner*